**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
Jonathan Gil, Esq. (SBN: 347431)
jonathan@kazlg.com
2221 Camino Del Rio S, Suite 101
San Diego, California 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*
Thomas Doughty

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DOUGHTY,<br><br>Plaintiff,<br><br>v.<br><br>PELICAN INVESTMENT HOLDINGS, LLC d/b/a AUTO SERVICE DEPARTMENT,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 42 U.S.C. § 227 *ET SEQ.***<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Thomas Doughty ("Plaintiff") brings this action against Pelican Investment Holdings, LLC d/b/a Auto Service Department ("Defendant") to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.*

2. Between July 2022 and August 2024, Defendant initiated ***over five hundred and sixty (560)*** unlawful telemarketing solicitation calls to Plaintiff. Plaintiff—despite

　　　also having registered with the National Do Not Call registry—repeatedly asked Defendant to stop calling him; however, Defendant refused to cease calling.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of his daily life. Additionally, Plaintiff seeks statutory and actual damages, as well as any other available legal or equitable remedies.

## JURISDICTION AND VENUE

4. Personal Jurisdiction of this Court arises pursuant to general jurisdiction. Defendant's principal place of business is located within this jurisdiction.

5. Venue is proper because the County of Orange is where the conduct giving rise to Plaintiff's injury originated from or occurred. Furthermore, Defendant is subject to liabilities in the County of Orange in the State of California, where Defendant operates and willfully and knowingly engaged in telemarketing communications with Plaintiff.

## PARTIES

6. Plaintiff is a natural person who resides in Kempner, Texas.

7. Defendant is a limited liability company whose principal address is in Costa Mesa, California.

## THE TCPA

8. The TCPA facilitated the creation and "operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations[.]"[1]

9. Accordingly, the TCPA prohibits "any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database[.]"[2]

10. Congress empowered the Federal Communications Commission ("FCC") to issue

---

[1] 47 U.S.C. § 227(c)(3)
[2] 47 U.S.C. § 227(c)(3)(F)

rules and regulations implementing the TCPA.

11. The FCC recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

12. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.[4]

13. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature such that plaintiff had "'clear and conspicuous disclosure' of the consequences of providing the requested consent…and having received this information, [Plaintiff] agree[d] unambiguously to receive such calls at a telephone number the [plaintiff] designate[d]."[5]

14. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."[6]

15. In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.[7]

16. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."[8]

17. The FCC defined telemarketing as calls motivated in part by the intent to sell property, goods, or services.[9] This is true whether call recipients are encouraged

---

[3] *Id.*
[4] See *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012).
[5] *Id.* at ¶ 33.
[6] 47 C.F.R. § 64.1200(f)(12)
[7] See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015)
[8] *Id.* at 820; (citing 47 C.F.R. §§ 64.1200(a)(2)(iii); 64.1200(f)(12)); See also *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14098 ¶ 141 (2003)).
[9] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14014 ¶¶ 139-142 (2003).

to purchase, rent, or invest in property, goods, or services during the call or in the future.[10]

18. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.[11]

19. If a call is not deemed telemarketing, the defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.[12]

20. The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."[13] Indeed, "[a] plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'"[14]

21. The FCC reiterated that "the TCPA and our existing rules already place the burden of proof on the texter or caller to prove that they have obtained consent that satisfies federal laws and regulations. They may not, for example, rely on comparison websites or other types of lead generators to retain proof of consent for calls the seller makes. And, in all cases, the consent must be from the consumer…the consumer's consent is not transferrable or subject to sale to another caller because it must be given by the consumer to the seller."[15]

**FACTUAL ALLEGATIONS**

22. Plaintiff owns four telephone numbers. Each of these numbers are used for residential purposes such as speaking with friends and family. The last four digits of each phone number are: (0995); (0292); (0033); and (4946).

23. Plaintiff registered the (0995) number with the National Do Not Call registry on

---

[10] *Id.*
[11] *Id.* at ¶ 136.
[12] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")
[13] *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)
[14] *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) (emphasis original))
[15] *Id.* at ¶ 49.

- 4 -
COMPLAINT

September 11, 2007.

24. Plaintiff registered the (0292) number with the National Do Not Call registry on January 17, 2022.

25. Plaintiff registered the (0033) number with the National Do Not Call registry on June 28, 2006.

26. Plaintiff registered the (4946) number with the National Do Not Call registry on October 6, 2011.

27. Defendants are required to check the National Do Not Call Registry before attempting to call.[16]

28. Between July 2022 and August of 2024, Defendant called Plaintiff over five hundred and sixty (560) times.

29. Defendant called Plaintiff on each of his cellular telephone numbers.

30. During these calls, Defendant or its agents introduced itself as a representative of the Auto Service Department.[17] The representative would ask for the year, make, model, and approximate mileage of Plaintiff's vehicles.[18] Defendant then proceeded to solicit vehicle warranties to Plaintiff.

31. On many of these unwanted calls, Plaintiff asked for a call-back number to determine who had called him. Universally, the representatives refused to provide direct call-back numbers and acted nervously when Plaintiff even asked. Thus, Plaintiff noticed that the number from which the representatives called him from were likely spoofed phone numbers (i.e., fake numbers used by Defendant or its agents).

32. Nevertheless, these representatives sometimes provided Plaintiff with a generic phone number, (888) 982-0046, and said if he called back someone else would

---

[16] 47 U.S.C. § 227(c)(3)(F).
[17] Additionally, Defendant sometimes provided a variation of the name, such as "Vehicle Service Department" or "Vehicle Processing Department" among others. After Plaintiff inquired, Defendant would clarify that it is the same Auto Service Department that kept calling Plaintiff.
[18] Plaintiff owns two vehicles: a 2018 Chevrolet Silverado and a 2012 Nissan Rogue.

likely speak with him. Defendant is associated with this phone number.

33. To confirm who had been soliciting him and prevent future unwanted calls, Plaintiff, on four occasions, purchased vehicle warranties, received information on the caller (Defendant), and then cancelled the warranties. Each time Plaintiff cancelled the warranties—among countless other requests—he asked Defendant to stop calling him.

34. For each warranty purchase, Plaintiff received a booklet addressed from the Auto Service Department PO Box 15727, Santa Ana CA 92735. Each booklet contained an Auto Service Department membership card. Additionally, these booklets contained contact information from the Auto Service Department Team. Specifically, Defendant provided (888) 982-0046 as its contact number—the same phone number many representatives gave to Plaintiff in lieu of a direct call-back number.

35. Moreover, these booklets contain a "Premium Service Agreement" or "Signature Service Agreement" which identifies the seller of these warranties as "Pelican Investment Holdings, LLC d/b/a Auto Service Department P.O. Box 15727, Santa Ana, CA 92735."

36. Defendant's calls constitute telephone solicitations because Defendant encouraged the future purchase or investment in property, goods, or services under 47 U.S.C. § 227(a)(4), i.e., attempting to sell Plaintiff vehicle and home warranties.

37. Defendant made the calls within this judicial district, and therefore, Defendant's violations of the TCPA occurred within this district.

38. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted. In fact, Plaintiff repeatedly asked Defendant to stop calling him. Thus, Defendant violated 47 U.S.C. § 227(c).

39. Defendant's unsolicited phone calls caused Plaintiff actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and

conversion.

40. Defendant's phone calls also inconvenienced Plaintiff and caused disruption to his daily life.

41. Defendant's unsolicited phone calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that he spent countless hours investigating the unwanted phone calls including how Defendant obtained his phone numbers and the identity of the Defendant. Indeed, Plaintiff even briefly purchased warranties to confirm Defendant's identity and to have Defendant stop calling (which it did not).

42. Furthermore, Defendant's phone calls took up memory on Plaintiff's cellular phones. The cumulative effect of unsolicited phone calls and voicemails such as those described herein pose a real risk of ultimately rendering the phones unusable for other purposes because of the phone's memory being taken up.

## CAUSE OF ACTION CLAIMED BY PLAINTIFF
### VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(C) ET SEQ.

43. Plaintiff incorporates by reference paragraphs 1-45 of this Complaint as though fully stated herein.

44. The foregoing acts and omissions constitute numerous and systematic violations of TCPA.

45. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

46. Defendant—or third parties directed by Defendant—made repeated non-emergency telephonic solicitations to Plaintiff.

47. These calls were made without regard to Plaintiff's registration on the National Do Not Call registry or Plaintiff's repeated requests for Defendant to cease calling.

48. Defendant did not have prior express consent to call Plaintiff's cell phones when the calls were made.

49. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiff told Defendant to stop calling him. The violations were therefore willful or knowing.

50. As a result of Defendant's conduct and pursuant to the § 227(c) of the TCPA, Defendant harmed Plaintiff such that Plaintiff is entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiff is also entitled to an injunction against future calls.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

- Injunctive relief against any future calls pursuant to 27 U.S.C. § 227(b)(3)(A);
- An award of statutory damages pursuant to 27 U.S.C. § 227(b)(3)(B);
- An order awarding declaratory relief against Defendant declaring Defendant's conduct as unlawful;
- Treble damages for willful violations
- An award of reasonable attorneys' fees;
- Any and all other relief the Court deems just and proper.

///
///

## TRIAL BY JURY

51. Plaintiff is entitled to, and demand, a trial by jury on all issues so triable.

Dated: September 5, 2024

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/Ryan L. McBride
Ryan L. McBride, Esq.
*Attorneys for Plaintiff*