**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
Jonathan Gil, Esq. (SBN: 347431)
jonathan@kazlg.com
2221 Camino del Rio S, Suite 101
San Diego, California 92108
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff*
Thomas Doughty

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DOUGHTY,<br><br>             Plaintiff,<br><br>      v.<br><br>PELICAN INVESTMENT HOLDINGS, LLC d/b/a AUTO SERVICE DEPARTMENT<br><br>             Defendant. | Case No.: 8:24-cv-01926-FWS-ADS<br><br>**Plaintiff's Motion for Default Judgment Against Defendant Pelican Investment Holdings, LLC d/b/a Auto Service Department** |

Plaintiff Thomas Doughty ("Plaintiff"), through his attorney of record, hereby moves this Court for a Default Judgment against Defendant Pelican Investment Holdings, LLC d/b/a Auto Service Department ("Defendant").

## I.   BASIS OF SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction without general subject matter jurisdiction and may only adjudicate those cases which the Constitution and Congress authorize. See *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). This court has federal question jurisdiction over the issues raised pursuant to the allegations raised under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq*. and 28 U.S.C. § 1331.

## II.   BASIS OF PERSONAL JURISDICTION

At all times relevant, Defendant conducted business within the State of California. Compl. ¶¶ 4-5, 7, 37. Indeed, the cause of action itself arose because of Defendant's collection actions towards Plaintiff in the State of California. *Id*. at ¶¶ 5, 37. Therefore, venue is proper, and personal jurisdiction has been established

## III.   SERVICE OF PROCESS

The Federal Rules provide that business entities may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]" Fed. R. Civ. P. 4(h). "In the Ninth Circuit, the requirements of Rule 4(h) are liberally construed to achieve its underlying purpose of giving a party notice of a claim against it." Grand Canyon Resort Corp. v. Drive-Yourself Tours, Inc., 2006 WL 1722314, * 3 (D. Ariz. June 22, 2006) (citing, among others, Direct Mail Specialists, Inc. v. Eclat Computerized Technologies. Inc., 840 F.2d 685, 688-89 (9th Cir. 1988); Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994)).

For purposes of service, an appointed agent's authority need not be express; it can also be implied. Grand Canyon Resort Corp., 2006 WL 1722314 at *3 (citing Direct Mail, 840 F.2d at 685). "Implied authority may be sufficient where an individual is not an employee but is 'so integrated with the organization that he will know what to do with the papers…so as to render it fair, reasonable and

just to imply authority on his part to receive service,' and as long as the party receives sufficient notice of the complaint." *Id*. (quoting Direct Mail, 840 F.2d at 866) (holding that receptionist employed by another corporation was an agent despite denial of authority when defendant corporation shared office space with her employer and she was only person in the office).

Here, Plaintiff properly served Defendant and Defendant appeared in the case. On September 10, 2024, Defendant was served a copy of the summons and complaint in this action. *See* ECF No. 8; *see also* Declaration of Ryan L. McBride in Support of Plaintiff's Motion for Entry of Default Judgment, "McBride Decl." ¶ 4. Plaintiff filed proof of service on September 11, 2024. *Id*. On October 28, 2024, after not having heard from Defendant, Plaintiff's counsel sent a letter to Defendant reminding them of the case and requesting their immediate response. *See* Declaration of Jonathan Gil in Support of Plaintiff's Motion for Entry of Default Judgment, "Gil Decl." ¶ 5. Plaintiff mailed copies of the letter to Defendant's registered agent, Defendant's principal address, Defendant's former principal address, and Defendant's mailing address as provided by the California Secretary of State. *Id*. In relevant portion, the letter—which contained the case number, case name, and contact information for our firm—stated that [i]f we do not receive a response from you or your attorney within 14 days, or as mandated by the Court, we will file a Notice and Motion for Default Judgment pursuant to FRCP 55(a)." *Id*. Additionally, the letter emphasized the seriousness of the matter:

> This matter involves serious allegations under the Telephone Consumer Protection Act (TCPA), which imposes strict penalties for unlawful conduct, including unauthorized calls, texts, or other communications. The TCPA is a federal statute that carries significant financial consequences, with statutory damages of up to $1,500 per violation. The claims brought against you are not trivial, and your failure to respond will be seen as an admission of the unlawful actions alleged.
>
> If you have retained legal counsel, I urge you to contact them immediately.

*See* Exhibit A, Letter to Defendant.

Plaintiff not only served Defendant upon their registered agent, but also mailed courtesy letters upon multiple locations to make sure Defendant had notice and acted upon it. On December 4, 2024, Counsel for Defendant reached out to Plaintiff's counsel and filed a Notice of Appearance with the Court. Gil Decl. ¶ 6; ECF No. 15. Per Defendant's request, Plaintiff stipulated to set aside default that had been entered one month prior. *See* ECF No. 16. On December 5, 2024, this Court set aside the

clerk's entry of default. ECF No. 17. On December 27, 2024, Defendant filed its Answer to the operative Complaint. ECF No. 18. On February 7, 2025, Plaintiff served Defendant with Discovery Requests. Gil Decl. ¶ 7.

On March 11, 2025, Defendant's counsel requested an extension until March 21, 2025, to respond to Plaintiff's Discovery Requests. Gil Decl. ¶ 8. Plaintiff's counsel granted the extension. On March 13, 2025, the Parties filed a Joint Report pursuant to Fed. R. Civ. P. 16 and 26(f). ECF No. 23. The Joint Report, under the section entitled "Status of Discovery," reiterated that Plaintiff had served Defendant discovery on February 7, 2025. ECF No. 23 at 4. *Id*. On March 21, 2025, Defendant's counsel requested a second extension until March 28, 2025. Gil Decl. ¶ 9. Plaintiff's counsel granted the second extension. *Id*. On April 8, 2025, Plaintiff's counsel requested an update on the discovery responses. *Id*. at ¶ 10. Defendant's counsel asked for an additional 48 hours. *Id*.

On April 14, 2025, not having heard from Defendant's counsel, Plaintiff's counsel sent Defendant's counsel a letter explaining that "our office has not received any responses or objections to [Plaintiff's] Request for Admissions, Special Interrogatories, or Request for Production of Documents, Set One from your client, Pelican Investment Holdings, LLC d/b/a Auto Service Department[.]" *Id*. at ¶ 11. On May 27, 2025, Plaintiff's counsel sent Defendant's counsel an email explaining that Plaintiff intends to file a Motion for Summary Judgment and requested to meet and confer. *Id*. at ¶ 12. Plaintiff's counsel followed up on this request on June 2, 2025. *Id*. On June 5, 2025, Plaintiff's counsel spoke with Defendant's counsel pursuant to L.R. 7-3. *Id*. at ¶ 13.

Plaintiff filed his Motion for Summary Judgment on July 3, 2025, and accompanying Statement of Uncontroverted Facts on July 7, 2025.[1] ECF Nos. 26, 28. Defendant did not file a Response. On August 4, 2025, the Court ordered Defendant to show cause its answer should not be stricken and default re-entered. ECF No. 29. Defendant did not respond to this Court. Defendant has had sufficient time and numerous chances to oblige with Plaintiff's requests and this Court. Defendant

---

[1] Plaintiff had prepared and finalized the Statement of Uncontroverted Facts for filing on July 3, 2025, concurrently with the Motion for Summary Judgment. Gil Decl. ¶ 14. Due to clerical error, the Statement did not get filed together with the Motion. *Id*. Upon realization, counsel immediately filed the Statement. *Id*.

has failed to do so. Given this procedural posture, Defendant is well-aware of and on notice of the instant action against it.

## IV. CLAIMS FOR LIABILITY

### A. Factual Basis of Illegal Conduct

Defendant engaged in the following illegal conduct which gives rise to this action. Plaintiff provides this summary in order to give the Court a better understanding of the basis for the amount of damages sought. *See also* ECF Nos. 26, 28.

Plaintiff owns four telephone numbers. *See* Declaration of Thomas Doughty in Support of Plaintiff's Motion for Default Judgment ("Doughty Decl.") ¶ 3. Each of these numbers are used for residential purposes such as speaking with friends and family. *Id*. The last four digits of each phone number are (0995); (0292); (0033); and (4946). *Id*. Plaintiff registered these phone numbers with the National Do Not Call Registry on September 11, 2007, January 17, 2022, June 28, 2006, and October 6, 2011. *Id*.

Starting in July 2022, Plaintiff began to receive telemarketing solicitations from Defendant. *Id*. at ¶ 4; s*ee also* Exhibit B, Call Logs. Between July 2022 and August 2024, Defendant called Plaintiff over five hundred and sixty (560) times without his consent. *Id*. at ¶ 5. To date, Plaintiff has received 655 telemarketing phone calls from Defendant without his consent. *Id*. The calls all began in much the same way: Defendant or its agents introduced themselves as a representative of the Auto Service Department.[2] *Id*. at ¶ 6. The callers began the phone calls by asking for the year, make, model, and approximate milage of Plaintiff's vehicles. *Id*. Afterwards, Defendant solicited vehicle warranties to Plaintiff. *Id*.

As Plaintiff became inundated with these phone calls, he sought to confirm the identity of the callers. *Id*. at ¶¶ 4, 6-7. Plaintiff asked for call-back numbers to determine who had called him. *Id*. at ¶ 7. Universally, the representatives refused to provide direct call-back numbers and acted nervously when Plaintiff asked. This led to Plaintiff's belief that the representatives called him from spoofed

---

[2] Defendant sometimes provided a variation of its name, such as "Vehicle Service Department" or "Vehicle Processing Department" among others. *Id*. at ¶ 6. After Plaintiff inquired, Defendant would clarify that it is the same Auto Service Department that kept calling Plaintiff. *Id*.

1 phone numbers (i.e., fake numbers used by Defendant). *Id*. Occasionally, the representatives provided
2 Plaintiff with the phone number (888) 982-0046 and said that if Plaintiff called back, someone else
3 would speak with him. *Id*. Plaintiff has called this number back and it is associated with Defendant.
4 *Id*. Furthermore, Plaintiff—on four occasions—purchased vehicle warranties to receive information
5 on the caller and then immediately cancelled the warranties. *Id*. at ¶ 8. For each warranty purchase,
6 Plaintiff received a booklet addressed from the Auto Service Department PO Box 15727, Santa Ana,
7 CA 92735. *Id*. These booklets contained contact information from the Auto Service Department
8 Team. *Id*. Specifically, Defendant provided (888) 982-0046 as its contact number—the same phone
9 number many representatives gave to Plaintiff in lieu of a direct call-back number. *Id*. Furthermore,
10 these booklets contain a "Premium Service Agreement" or "Signature Service Agreement" which
11 identified the seller of these warranties as "Pelican Investment Holdings, LLC d/b/a Auto Service
12 Department P.O. Box 15727, Santa Ana, CA 92735." *Id*. Each time Plaintiff cancelled the warranties,
13 he asked Defendant to stop calling him. *Id*. at ¶ 9. Plaintiff also requested for the calls to stop since
14 their inception and at least 70 times afterwards. *Id*. at ¶ 9.

### B. Legal Basis for the Harms Alleged

As noted above, Plaintiff brought this action against Defendant based on Defendant's repeated and systematic violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) for calling Plaintiff more than two times in a 12-month period more than 30 days after Plaintiff's telephone numbers were on the national do-not-call registry. Specifically, Plaintiff sought to be compensated for Defendant's willful, continuous telemarketing solicitations towards him, without his consent, and after numerous requests for these calls to stop. *See* Compl. ¶¶ 36, 38, 46-49.

### C. Award of Damages

Under the TCPA, Plaintiff is entitled to statutory damages, actual damages, and injunctive relief. *See* 47 U.S.C. § 227(c)(5). Plaintiff is only seeking statutory damages.

Statutory damages of up to $1,500.00 are available to Plaintiff under the TCPA based on Defendant's unlawful telemarketing activities. *See* 47 U.S.C. § 227(c)(5) ("If the court finds that defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times

the amount…").

Here, Plaintiff adequately set forth facts from his complaint and subsequent declarations that Defendant willfully violated the TCPA when it repeatedly called Plaintiff without his consent and after countless requests for Defendant to stop. Accordingly, Defendant is liable for the maximum statutory amount of $1,500.00 per violation to Plaintiff. Considering the egregious amount of phone calls, the regular requests for Defendant to stop calling, Plaintiff's significant investigative efforts in order to get Defendant to stop, and Defendant's complete disregard for the instant action and the Orders of this Court, Plaintiff requests the full $1,500.00 in statutory damages per violation.

### D. Federal Rules of Civil Procedure 55(b)(2)

"Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment if the clerk previously entered default based on defendant's failure to defend." *LHF Prods. v. Boughton*, 299 F. Supp. 3d 1104, 1112 (D. Nev. 2017). Defendant is not a minor nor incompetent person. Defendant is a business entity. *See* Compl. ¶ 7.

### E. Eitel Factors

Plaintiff has satisfied the procedural requirements for default judgment against Defendant. Plaintiff submitted a declaration and application for entry of default, which prompted the Clerk of the Court to enter default against Defendant on November 12, 2024. *See* ECF No. 13. Subsequently, this Court re-entered Default against Defendant. ECF No. 31. Plaintiff's request for relief does not differ from that prayed for in the complaint. The application for default judgment complies with the Federal Rules of Civil Procedure. Accordingly, the Court need only analyze the *Eitel* factors to determine whether default judgment is appropriate in this case. The Ninth Circuit holds that a district court may consider the following factors in exercising its discretion to award a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) "In applying this discretionary standard,

default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). In considering the *Eitel* factors, the Court takes all factual allegations in Plaintiff's Complaint as true, except for those relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

### 1. First *Eitel* Factor: Prejudice to Plaintiff

Plaintiff will be prejudiced if the Court does not enter default judgment against Defendant because Plaintiff will be left without any recourse. When denial of a Motion for Default Judgment leaves Plaintiff without any recourse, the first Eitel factor weighs in favor of granting the motion. *See Ariz. Bd. Of Regents v. Doe*, 555 F. Supp. 3d 805, 815 (D. Ariz. 2021); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Michael Grecco Productions, Inc. v. Trekmovie.com*, 677 F. Supp. 3d 1104, 1108 (C.D. Cal. 2023).

Here, Plaintiff will be prejudiced if he does not receive compensation for the violation of his rights afforded to him by the Telephone Consumer Protection Act. Plaintiff filed this suit in federal court and Defendant has failed to competently respond in every regard. Not only did Plaintiff properly serve Defendant pursuant to its registered agent, but Plaintiff later sent a courtesy letter to Defendant's registered agent, principal place of business, mailing address, and former principal place of business. *See* Exhibit A. Defendant only responded *after* the clerk first entered default judgment. Since that time, Plaintiff had made numerous good-faith attempts to litigate the case with Defendant—including, multiple extensions in discovery, filing of the joint report, meet and confers, and filing a Motion for Summary Judgment without any response. Accordingly, Defendant is aware of the action and chooses not to act. *See Boughton*, 299 F. Supp. 3d at 1113 (finding the first factor weighed in favor of plaintiff after plaintiff sent "demand letters…but [defendant] never responded."). Without default judgment, Plaintiff will be left with no other recourse and prejudiced in return. Furthermore, Plaintiff continued to receive phone calls from Defendant beyond the filing and service of the instant action. Doughty Decl. ¶ 5. Thus, the calls continued well into the filing of this action and Defendant continues to operate, despite not responding to Plaintiff or this Court.

### 2. Second and Third *Eitel* Factors: Merits and Sufficiency of the Claims

The second and third *Eitel* factors "are often analyzed together and require courts to consider

whether a plaintiff has state[d] a claim on which [they] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019).

Here, the Complaint sets forth with specificity the straightforward nature of the allegations against the Defendant. Plaintiff brought this action against Defendant as a result of Defendant's willful violations of the Telephone Consumer Protection Act. Specifically, "Defendant—or third parties directed by Defendant—made repeated non-emergency telephonic solicitations to Plaintiff," whose phone numbers he registered to the National Do Not Call registry. Compl. ¶¶ 22-27, 46-47. Indeed, "Defendant knew that it did not have prior express consent to make these calls especially since Plaintiff told Defendant to stop calling him." *Id*. at ¶ 49. Plaintiff spent countless hours investigating the origin of these unlawful calls, which continued well beyond the filing of this action, and repeatedly confirmed Defendant's involvement. *Id*. at ¶¶ 30-35, 41. The complaint, barely nine pages long, is clear and concise. *See* Compl. generally. Moreover, "because Defendant's failure to answer constitutes an admission to the averments contained in the complaint under FRCP 8(b), the Court must accept these allegations as true." *Black & Decker (U.S), Inc. v. All Spares, Inc.*, 2010 U.S. Dist. LEXIS 87334, at *4-5 (D. Ariz. Aug. 2, 2010).

The complaint is both legally and factually sufficient, the Court should find that the Plaintiff has demonstrated the merits of the case.

### 3. Fourth *Eitel* Factor: Money at Stake

Pursuant to the fourth *Eitel* factor, the Court will consider the amount of money at stake in relation to the seriousness of Defendant's conduct. Plaintiff seeks $1,500.00 in statutory damages per willful violation. To date, Plaintiff has received at least six hundred and fifty-five (655) unsolicited telephone calls from Defendant. *See* Doughty Decl. ¶ 5; s*ee also* Exhibit B. As Plaintiff requested that Defendant not call since the inception of these calls, Plaintiff would concede that the first call is negligent and the remaining calls are willful violations. Of the willful violations, Plaintiff seeks $981,000 in damages, and $500 in damages for the negligent violation. Thus, Plaintiff seeks a total of $981,500 in damages for Defendant's unending barrage of telemarketing solicitations.

Here, Plaintiff asked Defendant to stop calling at least 70 times. *See* Doughty Decl. ¶ 70. In light of Defendant's complete disregard for federal law, a statutory award in the amount of $981,500

is not excessive or unreasonable—rather, it is the authorized compensation for Defendant's willful actions. Had Defendant adhered even once to Plaintiff's requests to cease communications, much of this may have been avoided. However, Defendant refused to do so, just as Defendant acknowledges but refuses to respond to the instant action. Defendant continues to ignore its responsibilities under the law and must be held accountable. Conversely, Plaintiff has been harmed significantly by almost 700 unwanted telephone calls. Within this context, Plaintiff's request for statutory damages is wholly reasonable.

### 4. Fifth and Sixth *Eitel* Factors: Factual Disputes and Excusable Neglect

As to the fifth and sixth factors, Defendant has been given a fair amount of time to respond and deny that Defendant engaged in such unlawful telemarketing. Defendant failed to do so on numerous occasions. In fact, Defendant failed to participate in any meaningful way in the instant litigation. *See Braunlich v. Arizona Rd. Trip Auto LLC*, 2020 U.S. Dist. LEXIS 151573, at *2 (D. Ariz. 2020) ("Due to Defendants' failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect."). Because no dispute has been raised by Defendant regarding Plaintiff's material factual allegations, and because Plaintiff's allegations are predicated on declarations and testimony that clearly support its allegations, these factors turn in favor of granting default judgment.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

Finally, the seventh *Eitel* factor discourages default judgments and encourages rendering decisions "upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Under Rule 55(a), "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Pepsi Co., Inc.*, 238 F. Supp. 2d at 1177. Although public policy favors decisions on the merits, the seventh *Eitel* factor does not preclude the Court from entering default judgment against Defendant. *Id.*

Here, Defendant failed to defend the action and has, consequently, rendered adjudication on the merits before this Court impracticable. Plaintiff sent numerous communications to Defendant, which Defendant either ignored or otherwise took no further action. Plaintiff filed a Motion for Summary Judgment which Defendant completely ignored, including a generous continuance to

respond by the Court. This Court also requested that Defendant show cause why its Answer should not be stricken and failed to do so. Defendant has refused to participate or defend the lawsuit. The Court should find that Defendant had ample time to defend the merits of the case and failed to take such an opportunity. Thus, this factor should weigh in favor of granting Plaintiff's default judgment.

Accordingly, in light of all *Eitel* factors, the Court should find that default judgment against Defendant is appropriate.

### F. Statement of Consultation

Plaintiff's counsel repeatedly tried to contact Defendant. Plaintiff counsel's attempted to establish lines of communication to either settle the case or generally communicate about any matter related to Plaintiff's claims have been unsuccessful. *See* McBride Decl. ¶ 6; Gil Decl. ¶ 15.

### V. CONCLUSION

In the present case, Plaintiff requests judgment be entered against Defendant for a total award of:

- $981,500 in statutory damages

Dated: September 24, 2025                                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/Ryan L. McBride
Ryan L. McBride, Esq.
*Attorneys for Plaintiff*