**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
Jonathan Gil, Esq. (SBN: 347431)
jonathan@kazlg.com
2221 Camino del Rio S, Suite 101
San Diego, California 92108
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff*
Thomas Doughty

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DOUGHTY,<br><br>                    Plaintiff,<br><br>        v.<br><br>PELICAN INVESTMENT HOLDINGS, LLC d/b/a AUTO SERVICE DEPARTMENT<br><br>                    Defendant. | Case No.: 8:24-cv-01926-FWS-ADS<br><br>**Plaintiff's Renewed Motion for Default Judgment Against Defendant Pelican Investment Holdings, LLC d/b/a Auto Service Department**<br><br>Date: January 15, 2026<br>Time: 10:00 a.m.<br>Courtroom: 10D, 10th Floor<br><br>Hon. Fred W. Slaughter |

Plaintiff Thomas Doughty ("Plaintiff"), through his attorney of record, hereby moves this Court for a Default Judgment against Defendant Pelican Investment Holdings, LLC d/b/a Auto Service Department ("Defendant"). Notably, Defendant is completely aware of this lawsuit, but refuses to participate. As a result, Plaintiff requests that the Court take a negative inference towards Defendant in this motion.

## I. RELEVANT PROCEDURAL HISTORY

On September 5, 2024, Plaintiff filed a Complaint against Defendant alleging violations of the Telephone Consumer Protection Act ("TCPA"). (Dkt. 1.) On November 5, 2024, Plaintiff motioned for the Clerk to enter default against Defendant. (Dkt. 12.) The Clerk of the Court entered default against Defendant on November 12, 2024. (Dkt. 13.) On December 4, 2024, Defendant appeared and the Parties stipulated to set aside entry default. (Dkts. 15, 16.) On December 5, 2024, the Court set aside entry of default. (Dkt. 17.)

On December 27, 2024, Defendant filed its Answer to the Complaint. (Dkt. 18.) On March 13, 2025, the Parties filed a Joint Rule 26(f) Report and Discovery Plan. (Dkt. 23.) The Court entered its Scheduling Order on March 18, 2025. (Dkt. 24.) On July 3, 2025, Plaintiff served discovery on Defendant. Defendant did not respond to the discovery requests, including requests for admissions. Plaintiff conferred with Defendant and subsequently Plaintiff filed a Motion for Summary Judgment. (Dkts. 26, 28.)

On August 26, 2025, the Court—as a result of Defendant's failure to respond to either Plaintiff's Motion for Summary Judgment or the Court's Order to Show Cause—struck Defendant's Answer, entered Default against Defendant, and denied Plaintiff's Motion for Summary Judgment as moot. (Dkt. 30.) On September 25, 2025, Plaintiff filed a Motion for Default Judgment against Defendant. (Dkt. 34.)

On November 14, 2025, the Court denied Plaintiff's Motion for Default Judgment ("Order"). (Dkt. 38.) In its Order, the Court found that Plaintiff satisfied the requirements of Subject Matter Jurisdiction and Personal Jurisdiction, as well as

sufficient service of process and the procedural requirements under the Federal Rules and Local Rule 55-1. (Order at 2-3.) The Court next addressed the *Eitel* factors, wherein it concluded that the first (prejudice to plaintiff) and sixth (whether default was due to excusable neglect) factors weighed in favor of granting default judgment. (*Id*. at 4, 8-9.) Conversely, it found the second (merits of claims), third (sufficiency of complaint), fourth (money at stake), and fifth (possibility of dispute concerning material facts) factors to weigh against granting default judgment. (*Id*. at 4-8.) The Court also found that "the seventh *Eitel* factor is neutral and does not preclude granting default judgment." (*Id*. at 9.) Finally, the Court noted deficiencies related to Plaintiff's proof of damages, explaining "that Plaintiff's self-generated table delivers insufficient evidence to support damages provided by the statute, especially at the amount Plaintiff requests." (*Id*. at 10.)

## II. BASIS OF SUBJECT MATTER JURISDICTION

As noted in the Court's Order (Dkt. 38), this court has federal question jurisdiction over the issues raised pursuant to the allegations raised under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq*. and 28 U.S.C. § 1331.

## III. BASIS OF PERSONAL JURISDICTION

At all times relevant, Defendant conducted business within the State of California. (Compl. ¶¶ 4-5, 7, 37.) The cause of action arose because of Defendant's actions towards Plaintiff in the State of California. (*Id*. at ¶¶ 5, 37.) Therefore, venue is proper, and personal jurisdiction has been established. (*See* Order at 2.)

## IV. SERVICE OF PROCESS AND PROCEDURAL REQUIREMENTS

The Court previously found "that Plaintiff makes a sufficient showing that Defendant was adequately served." (Order at 3; *see* Declaration of Jonathan Gil ("Gil Decl.") ¶ 4; Declaration of Ryan L. McBride ("McBride Decl.") ¶¶ 4.)

Additionally, the Court previously found that Plaintiff satisfied the requirements of Fed. R. Civ. P. 55(b) along with C.D. Cal. L.R. 55-1. (Order at 3.) Plaintiff's counsel reiterates that Defendant is not a minor, incompetent person, or person in military

service or otherwise exempted from default judgment under the Servicemembers Civil Relief Act of 1940. (Gil Decl. ¶ 16.)

## V. CLAIMS FOR LIABILITY

### A. Factual Basis of Illegal Conduct

Plaintiff owns four telephone numbers. *See* Declaration of Thomas Doughty in Support of Plaintiff's Motion for Default Judgment ("Doughty Decl.") ¶ 3. Each of these numbers are used for residential purposes such as speaking with friends and family. *Id*. The last four digits of each phone number are (0995); (0292); (0033); and (4946). *Id*. Plaintiff registered these phone numbers with the National Do Not Call Registry on September 11, 2007, January 17, 2022, June 28, 2006, and October 6, 2011. *Id*.

Starting in July 2022, Plaintiff began to receive telemarketing solicitations from Defendant. *Id*. at ¶ 4; s*ee also* Exhibit A, Self-Generated Call Logs; Exhibit B, Call Records. Between July 2022 and August 2024, Defendant called Plaintiff over five hundred and sixty (560) times. *Id*. at ¶ 4, 11. The calls all began in much the same way: Defendant or its agents introduced themselves as a representative of the Auto Service Department.[1] *Id*. at ¶ 12. The callers began the phone calls by asking for the year, make, model, and approximate milage of Plaintiff's vehicles. *Id*. Afterwards, Defendant solicited vehicle warranties to Plaintiff. *Id*.

As Plaintiff became inundated with these phone calls, he sought to confirm the identity of the callers. *Id*. at ¶ 13. Plaintiff asked for call-back numbers to determine who had called him. *Id*. Universally, the representatives refused to provide direct call-back numbers and acted nervously when Plaintiff asked. This led to Plaintiff's belief that the representatives called him from spoofed phone numbers (i.e., fake numbers

---

[1] Defendant sometimes provided a variation of its name, such as "Vehicle Service Department" or "Vehicle Processing Department" among others. *Id*. at ¶ 12. After Plaintiff inquired, Defendant would clarify that it is the same Auto Service Department that kept calling Plaintiff. *Id*.

used by Defendant). *Id*. Occasionally, the representatives provided Plaintiff with the phone number (888) 982-0046 and said that if Plaintiff called back, someone else would speak with him. *Id*. Plaintiff has called this number back and it is associated with Defendant. *Id*. Furthermore, Plaintiff—on four occasions—purchased vehicle warranties to receive information on the caller and then immediately cancelled the warranties. *Id*. at ¶¶ 14-18. For each warranty purchase, Plaintiff received a booklet addressed from the Auto Service Department PO Box 15727, Santa Ana, CA 92735. *Id*. at ¶ 14. These booklets contained contact information from the Auto Service Department Team. *Id*. Specifically, Defendant provided (888) 982-0046 as its contact number—the same phone number many representatives gave to Plaintiff in lieu of a direct call-back number. *Id*. Furthermore, these booklets contain a "Premium Service Agreement" or "Signature Service Agreement" which identified the seller of these warranties as "Pelican Investment Holdings, LLC d/b/a Auto Service Department P.O. Box 15727, Santa Ana, CA 92735." *Id*. Aside from the first warranty cancellation, Plaintiff asked Defendant to stop calling him upon each subsequent warranty cancellation. *Id*. at ¶ 15-18. Plaintiff also requested for the calls to stop since their inception. *Id*. at ¶ 20.

### B. Legal Basis for the Harms Alleged

As noted above, Plaintiff brought this action against Defendant based on Defendant's repeated and systematic violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) for calling Plaintiff more than two times in a 12-month period more than 30 days after Plaintiff's telephone numbers were on the national do-not-call registry. Specifically, Plaintiff sought to be compensated for Defendant's willful, continuous telemarketing solicitations towards him, without his consent, and after numerous requests for these calls to stop. *See* Compl. ¶¶ 36, 38, 46-49.

### C. Award of Damages

Under the TCPA, Plaintiff is entitled to statutory damages, actual damages, and injunctive relief. *See* 47 U.S.C. § 227(c)(5). Plaintiff is only seeking statutory damages.

Statutory damages of up to $1,500.00 are available to Plaintiff under the TCPA based on Defendant's unlawful telemarketing activities. *See* 47 U.S.C. § 227(c)(5) ("If the court finds that defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount…").

Here, Plaintiff adequately set forth facts from his complaint and subsequent declarations that Defendant willfully violated the TCPA when it repeatedly called Plaintiff without his consent and after countless requests for Defendant to stop. Accordingly, Defendant is liable for the maximum statutory amount of $1,500.00 per violation to Plaintiff. Considering the egregious amount of phone calls, the regular requests for Defendant to stop calling, Plaintiff's significant investigative efforts in order to get Defendant to stop, and Defendant's complete disregard for the instant action and the Orders of this Court, Plaintiff requests the full $1,500.00 in statutory damages per violation.

### D. Federal Rules of Civil Procedure 55(b)(2)

"Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment if the clerk previously entered default based on defendant's failure to defend." *LHF Prods. v. Boughton*, 299 F. Supp. 3d 1104, 1112 (D. Nev. 2017). Defendant is not a minor nor incompetent person. Defendant is a business entity. *See* Compl. ¶ 7.

### E. Eitel Factors

Plaintiff has satisfied the procedural requirements for default judgment against Defendant. Plaintiff submitted a declaration and application for entry of default, which prompted the Clerk of the Court to enter default against Defendant on November 12, 2024. *See* Dkt. 13. Subsequently, this Court re-entered Default against Defendant. (Dkt. 31.) Plaintiff's request for relief does not differ from that prayed for in the complaint. The application for default judgment complies with the Federal Rules of Civil Procedure. Accordingly, the Court need only analyze the *Eitel* factors to determine

whether default judgment is appropriate in this case. The Ninth Circuit holds that a district court may consider the following factors in exercising its discretion to award a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). In considering the *Eitel* factors, the Court takes all factual allegations in Plaintiff's Complaint as true, except for those relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

### 1. First *Eitel* Factor: Prejudice to Plaintiff

This Court previously found that "the first Eitel factor weighs in favor of granting default judgment." (Order at 4.) However, it should be noted that Plaintiff's prejudice also extends from Defendant's utter willful disregard to participate in the lawsuit despite its prior appearance. Defendant, for its part, is likely in possession of the documents needed to fully corroborate the allegations in the complaint. Defendant is fully aware of the lawsuit, but just refuses to participate, despite participating in other litigation around the country. As such, Plaintiff has been prejudiced by the need to file for default judgment in and of itself. Indeed, prior to the Court striking Defendant's answer, its failure to respond to Requests for Admission after filing an answer and participating in the litigation, provided Plaintiff sufficient cause to file his Motion for Summary Judgment. (Dkt. 26, 28.)

### 2. Second and Third *Eitel* Factors: Merits and Sufficiency of the Claims

The second and third *Eitel* factors "are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [they] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019).

Here, the Complaint sets forth with specificity the straightforward nature of the allegations against the Defendant. Plaintiff brought this action against Defendant as a result of Defendant's willful violations of the Telephone Consumer Protection Act. Specifically, "Defendant—or third parties directed by Defendant—made repeated non-emergency telephonic solicitations to Plaintiff," whose phone numbers he registered to the National Do Not Call registry. Compl. ¶¶ 22-27, 46-47. Indeed, "Defendant knew that it did not have prior express consent to make these calls especially since Plaintiff told Defendant to stop calling him." *Id*. at ¶ 49. Plaintiff spent countless hours investigating the origin of these unlawful calls, which continued well beyond the filing of this action, and repeatedly confirmed Defendant's involvement. *Id*. at ¶¶ 30-35, 41. The complaint, barely nine pages long, is clear and concise. *See* Compl. generally. Moreover, "because Defendant's failure to answer constitutes an admission to the averments contained in the complaint under FRCP 8(b), the Court must accept these allegations as true." *Black & Decker (U.S), Inc. v. All Spares, Inc.*, 2010 U.S. Dist. LEXIS 87334, at *4-5 (D. Ariz. Aug. 2, 2010).

Indeed, Plaintiff also compiled a list of the calls Defendant made in violation of the TCPA. *See* Doughty Decl. ¶ 4. After removing those calls that occurred within an alleged business relationship, the list totals 436 calls from Defendant. *Id*. When cross referenced against Plaintiff's Billing Statements, 41 calls remain that are both on this list and appear in T-Mobile's records. *Id*. at ¶ 5. It should be noted that T-Mobile's billing statements *do not* include calls that went unanswered or disconnected. *Id*. at ¶¶ 4-5, 10. Plaintiff repeatedly requested the full records from T-Mobile, but T-Mobile refused to provide them unless issued a subpoena. *Id*. at ¶¶ 4, 10. Given the procedural posture of the case, Plaintiff has been unable to obtain these full records. Nevertheless,

Plaintiff has signed an affidavit affirming receipt of these unauthorized calls. *Id*. Additionally, Plaintiff has provided sufficient reasoning for his belief that these calls originated from Defendant. *Id*. at ¶¶ 5-9.

The complaint is both legally and factually sufficient, the Court should find that the Plaintiff has demonstrated the merits of the case.

### 3. Fourth *Eitel* Factor: Money at Stake

Pursuant to the fourth *Eitel* factor, the Court will consider the amount of money at stake in relation to the seriousness of Defendant's conduct. Plaintiff seeks $1,500.00 in statutory damages per willful violation. Overall, Plaintiff received at least four hundred thirty-six (436) unsolicited telephone calls from Defendant. *See* Doughty Decl. ¶ 4; s*ee also* Exhibit A. Of those calls, Plaintiff is currently able to corroborate forty-one (41) that he either answered or went to voicemail. *Id*. at ¶ 5. As Plaintiff requested that Defendant not call since the inception of these calls, Plaintiff would concede that the first call is negligent and the remaining calls are willful violations. Of the willful violations, Plaintiff seeks $654,000 in damages, and $500 in damages for the negligent violation. Thus, Plaintiff seeks a total of $654,500 in damages for Defendant's unending barrage of telemarketing solicitations. Alternatively, Plaintiff seeks willful damages for the 41 calls that are corroborated in his T-Mobile billing statements, totaling $61,500. Given Defendant's willful blindness to this lawsuit, this request is fair.

Here, Plaintiff repeatedly asked Defendant to stop calling. Doughty Decl. ¶ 20. In light of Defendant's complete disregard for federal law, the statutory award requested is not excessive or unreasonable—rather, it is the authorized compensation for Defendant's willful actions. Had Defendant adhered even once to Plaintiff's requests to cease communications, much of this may have been avoided. However, Defendant refused to do so, just as Defendant acknowledges but refuses to respond to the instant action. Defendant continues to ignore its responsibilities under the law and must be held accountable. Conversely, Plaintiff has been harmed significantly by

Defendant's unwanted telephone calls. Within this context, Plaintiff's request for statutory damages is wholly reasonable.

### 4. Fifth and Sixth *Eitel* Factors: Factual Disputes and Excusable Neglect

The Court previously found that Defendant's default did not result from excusable neglect (Order at 8-9.) Still, Defendant has been given a fair amount of time to respond and deny that Defendant engaged in such unlawful telemarketing. Defendant failed to do so on numerous occasions, including in response to Plaintiff's first Motion for Default Judgment (and now Renewed Motion). In fact, Defendant failed to participate in *any* meaningful way in the instant litigation. *See Braunlich v. Arizona Rd. Trip Auto LLC*, 2020 U.S. Dist. LEXIS 151573, at *2 (D. Ariz. 2020) ("Due to Defendants' failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect.").

As for the possibility of dispute concerning material facts, Defendant's repeated failures to participate can only be inferred as tacit admission of its guilt. Defendant has had numerous opportunities to dispute the material facts in this case and has not done so. Because no dispute has been raised by Defendant regarding Plaintiff's material factual allegations, and because Plaintiff's allegations are predicated on declarations and testimony that clearly support its allegations, the fifth factor turns in favor of granting default judgment.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

Previously, this Court found "that the seventh *Eitel* factor is neutral and does not preclude granting default judgment." (Order at 9). However, Plaintiff again asserts that Defendant's willful disregard of this lawsuit should not be rewarded. The policy should be to hold accountable those defendants that are well aware of litigation, but choose not to participate. Accordingly, in light of all *Eitel* factors, the Court should find that default judgment against Defendant is appropriate.

### F. Statement of Consultation

Plaintiff's counsel repeatedly tried to contact Defendant. Plaintiff counsel's

attempted to establish lines of communication to either settle the case or generally communicate about any matter related to Plaintiff's claims have been unsuccessful, including contacting Defendant's previous counsel. *See* McBride Decl. ¶ 6; Gil Decl. ¶ 15. Additionally, Plaintiff has adhered to the requirements of L.R. 55-1. *See* Gil Decl. ¶ 16.

## VI. CONCLUSION

In the present case, Plaintiff requests judgment be entered against Defendant for a total award of:

- $654,500 in statutory damages for 436 phone calls; or alternatively
- $61,500 in statutory damages for 41 phone calls.

Dated: December 9, 2025                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/Ryan L. McBride
Ryan L. McBride, Esq.
*Attorneys for Plaintiff*