**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
Jonathan Gil, Esq. (SBN: 347431)
jonathan@kazlg.com
2221 Camino del Rio S, Suite 101
San Diego, California 92108
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff*
Thomas Doughty

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DOUGHTY,<br><br>                    Plaintiff,<br><br>v.<br><br>PELICAN INVESTMENT HOLDINGS, LLC d/b/a AUTO SERVICE DEPARTMENT<br><br>                    Defendant. | Case No.: 8:24-cv-01926-FWS-ADS<br><br>**Declaration of Thomas Doughty in Support of Plaintiff's Motion for Default Judgment Against Defendant Pelican Investment Holdings, LLC d/b/a Auto Service Department**<br><br>Date: January 15, 2026<br>Time: 10:00 a.m.<br>Courtroom: 10D, 10th Floor<br><br>Hon. Fred W. Slaughter |

- 1 -
Doughty Declaration

I, Thomas Doughty, hereby declare under penalty of perjury that the following is true and correct:

1. I have personal knowledge of the following facts and, if called as a witness, would testify as follows:

2. I am the Plaintiff in this action and make this declaration in support of Plaintiff's Motion for Default Judgment.

3. I own four telephone numbers. I use these numbers for residential purposes such as speaking with friends and family. The last four digits of each phone number are (0995), (0292), (0033), and (4946). I registered these numbers with the National Do Not Call Registry on September 11, 2007, January 17, 2022, June 28, 2006, and October 6, 2011, respectively.

4. In July 2022, I began to receive telemarketing phone solicitations from Defendant. I received so many calls that I began to keep track of them in a phone log that will be included as Exhibit A to this Declaration. The current iteration of this phone log details the date and time of the call, its disposition (inbound, outbound, missed, declined), the caller's phone number, columns E through F that I had used to cross-reference T-Mobile billing call record spreadsheets. For these latter two columns, the entries which indicate "N/A" are the calls that I did not answer nor went to voicemail. As explained below, T-Mobile does not provide full call records, which would include these missed or declined calls, absent a subpoena or court order. Exhibit A also highlights those calls which occurred during an established business relationship. When excluding those calls, I received at least 436 calls from Defendant.

5. I will include by December 10, 2025 as Exhibit B to this Declaration, Billing Statements from T-Mobile corroborating my receipt of the forty-one (41) phone calls that I either answered or went to voicemail. The remaining calls were not answered and did not go to my voicemail; however, my prior knowledge of the

- 2 -
Doughty Declaration

phone industry suggests a high likelihood that these calls came from Defendant.

6. I grew up in a family of Bell telephone employees. Starting at the age of nine, my father taught me the ins and outs of the telecommunications industry. At seventeen, I joined the Navy and became an electronics technician. In the early 1990s, I became the service and installation manager of Sherwood Communications and then AVA Communications. I then worked for Security Link Systems as a network and communications troubleshooter. Around 2002, I went to work for a large medical practice as a network and communications administrator.

7. During my different jobs, my main responsibilities included the selection, installation, maintenance, and repair of the company's telecommunications infrastructure. Specifically, I had to ensure proper configuration and operation of phone systems to maintain reliability. During this time, I dealt with Direct Inward Dialing plans, or DIDs, which allow outside callers to call in directly to an inside extension, avoiding the central operator. DID numbers are provided in groups of up to 1000 (or more) sequential numbers, i.e., (555) 555-1000, 1001, 1002, 1003, etc. This is the standard protocol for the telecommunications industry.

8. When compiling the calls from Defendant, I discovered, after receiving hundreds of calls, that they were exhibiting the same DID structure I had been working with for years. I have many missed or unanswered calls from Defendant which reflect a pattern of sequential phone numbers. Defendant rarely, if ever, called from the same number twice, even when I received multiple calls in the same day, or even the same hour.

9. As such, I have strong reason to believe that those numbers which went unanswered but exhibited the DID protocol for Defendant's other phone calls which I did answer, should be attributable to Defendant.

10. Additionally, as T-Mobile does not provide the billing statement call records

for unanswered calls that do not go to voicemail, I reached out to T-Mobile and requested full communication records. In response, T-Mobile refused to provide the full records which could corroborate the receipt of these unanswered calls, which I self-documented. Instead, T-Mobile stated the only way to receive them would be through subpoena or court order.

11. From July 2022 through August 2024, I received over five hundred and sixty (560) unwanted phone calls from Defendant in its attempt to solicit vehicle warranties. Defendant continued to call me after the filing and service of the Complaint and Summons. I did not provide my consent to be called.

12. The callers used a similar template for each call. Most often, the callers introduced themselves as representatives of the Auto Service Department. Occasionally, the callers identified themselves with a derivative name, such as Vehicle Service Department or Vehicle Processing Department. For the latter identifications, I asked them to clarify if they represented the same Auto Service Department to which they responded affirmatively. The callers then asked for the year, make, model and approximately milage of my vehicles. Once they received this information, they proceeded to solicit vehicle warranties.

13. To confirm the origin of these phone calls, I engaged with certain callers to prod information. I asked for call-back numbers to determine who had called. Universally, the representatives refused to provide a direct call-back number, and they acted nervously when I even asked. This led to my belief that the phone numbers that these individuals called from were spoofed phone numbers and they had been coached not to provide direct phone contact information. Occasionally, the callers provided the phone number (888) 982-0046 and said that if I called back, someone else would speak with me. I called that number back on several occasions and each time it went to Defendant.

14. Additionally, I purchased vehicle warranties on four occasions so as to receive information on the caller and confirm their identity as Defendant. For each

warranty purchase, I received a booklet addressed from the Auto Service Department PO Box 15727, Santa Ana, CA 92735. The booklets contained contact information from the Auto Service Department Team, including the phone number (888) 982-0046. Additionally, the booklets contained a "Premium Service Agreement" or "Signature Service Agreement" which identified the seller of these warranties by name: Pelican Investment Holdings, LLC d/b/a Auto Service Department P.O. Box 15727, Santa Ana, CA 92735.

15. On August 25, 2022, at 3:13 p.m., I received a telemarketing call from Defendant and purchased the first warranty. On September 14, 2022, at 1:49 p.m., I spoke to Defendant and cancelled the first warranty purchase. I included as Exhibit C, a Bank Statement detailing these transactions.

16. On March 22, 2023, at 10:03 a.m., I received a telemarketing call from Defendant and purchased a second warranty. On April 6, 2023, at 2:28 p.m., I spoke to Defendant, cancelled the second warranty purchase, and asked not to be called again. I included as Exhibit D, a Bank Statement detailing these transactions.

17. On June 27, 2024, at 3:10 p.m., I received a telemarketing call from Defendant and purchased a third warranty. On July 26, 2024, at 4:54 p.m., I cancelled the third warranty purchase, and asked not to be called again. I included as Exhibit E, a Bank Statement detailing these transactions.

18. On July 6, 2024, at 1:30 p.m., I received a telemarketing call from Defendant and purchased a fourth warranty. On August 5, 2024, at 4:38 p.m., I spoke to Defendant, cancelled the third warranty purchase, and asked not to be called again. I included as Exhibit F, a Bank Statement detailing these transactions.

19. Certain bank statements show a refund date that is after the cancellation date. I am of the belief that these discrepancies occurred due to a lag between my cancellation phone calls and the refund transaction itself.

20. I never requested to be contacted by Defendant except for those specific

instances when, in an effort to confirm their identity, I purchased a warranty. I repeatedly asked Defendant, from the inception, to stop calling him. Moreover, upon cancelling all but the first warranty, I simultaneously told them not to call me anymore.

21. I am not aware of an active court case against me involving Defendant.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was signed on December 8, 2025, in Kempner, Texas.

Dated: December 8, 2025          Respectfully submitted,

By: _____
Thomas Doughty