_____

| UNITED STATES DISTRICT COURT | |
|---|---|
| CENTRAL DISTRICT OF CALIFORNIA | **JS-6** |
| **CIVIL MINUTES – GENERAL** | |

| | |
|---|---|
| Case No. 8:24-cv-01926-FWS-ADS | Date: January 9, 2026 |
| Title: Thomas Doughty v. Pelican Investment Holdings, LLC | |

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [40]**

Plaintiff Thomas Doughty alleges that Defendant Pelican Investment Holdings, LLC doing business as Auto Service Department called Plaintiff over five hundred times, each call in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c). (*See generally* Dkt. 1 ("Compl.").) Defendant briefly appeared in this case but eventually stopped defending itself. (*See* Dkt. 29.) The court thus struck Defendant's answer, (*see* Dkt. 30), and the clerk entered default, (Dkt. 31).

The court denied Plaintiff's first motion for default judgment. (Dkt. 38 ("Prior Order").) The court's denial was without prejudice to refiling if Plaintiff could cure the deficiencies the court identified. (*Id.* at 11.) Now before the court is Plaintiff's renewed motion for default judgment. (Dkt. 40 ("Mot.").) The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the hearing set for **January 15, 2026,** is **VACATED** and off calendar. Based on the record, as applied to the relevant law, the Motion is **DENIED.**

I.   **Background**

Plaintiff alleges that he owns four residential telephone numbers, all registered on the National Do Not Call registry between 2007 and 2022. (Compl. ¶¶ 22-26.) "Between July

_____

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:24-cv-01926-FWS-ADS | Date: January 9, 2026 |
| Title: Thomas Doughty v. Pelican Investment Holdings, LLC | |

2022 and August of 2024, Defendant called Plaintiff over five hundred and sixty (560) times." (*Id.* ¶ 28.)

"During these calls, Defendant or its agents introduced itself as a representative of the Auto Service Department. The Representative would ask for the year, make, model, and approximate mileage of Plaintiff's vehicles. Defendant then proceeded to solicit vehicle warranties to Plaintiff." (*Id.* ¶ 30.) "On many of these unwanted calls, Plaintiff asked for a call-back number to determine who had called him." (*Id.* ¶ 31.) "To confirm who had been soliciting him and prevent future unwanted calls, Plaintiff, on four occasions, purchased vehicle warranties, received information on the caller (Defendant), and then cancelled the warranties. Each time Plaintiff cancelled the warranties—among countless other requests—he asked Defendant to stop calling him." (*Id.* ¶ 33.) "At no point in time did Plaintiff provide Defendant with his express written consent to be contacted. In fact, Plaintiff repeatedly asked Defendant to stop calling him." (*Id.* ¶ 38.)

## II.     Discussion

At the outset, the court notes a change in Plaintiff's position. While Plaintiff's allegations and previous submissions indicate that Plaintiff answered at least a substantial proportion of the 560 calls he allegedly received, Plaintiff now explains in a declaration that he only answered, or received a voicemail on, 41 of the 560 calls alleged in the Complaint. (Dkt. 40-3 ("Doughty Decl.") ¶ 5.) Plaintiff submits his telephone billing records and explains that those records only reflect the 41 calls in which Plaintiff answered or the caller left a voicemail and do not reflect missed or declined calls. (*Id.* ¶ 4.) Plaintiff submits that the calls listed on his self-generated table but not on the phone records—each from a different telephone number, and from telephone numbers distinct from the telephone numbers on the phone calls Plaintiff answered or received a voicemail on—are attributable to Defendant even though he did not answer those calls because his "prior knowledge of the phone industry suggests a high likelihood that these calls came from Defendant." (*Id.* ¶ 5.) The court notes with disappointment that it was not clear in Plaintiff's prior filings that he was making an educated guess regarding the calls in this case. Take for example the following paragraphs from the Complaint:

___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**JS-6**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:24-cv-01926-FWS-ADS | Date: January 9, 2026 |
| Title: Thomas Doughty v. Pelican Investment Holdings, LLC | |

> 28. Between July 2022 and August of 2024, Defendant called Plaintiff over five hundred and sixty (560) times.
> 29. Defendant called Plaintiff on each of his cellular telephone numbers.
> 30. During these calls, Defendant or its agents introduced itself as a representative of the Auto Service Department. The representative would ask for the year, make, model, and approximate mileage of Plaintiffs vehicles. Defendant then proceeded to solicit vehicle warranties to Plaintiff.

(Compl. ¶¶ 28-30 (footnotes omitted).) Further, consider Plaintiff's characterization of the complaint in the prior motion for default judgment:

> Between July 2022 and August 2024, Defendant called Plaintiff over five hundred and sixty (560) times without his consent. To date, Plaintiff has received 655 telemarketing phone calls from Defendant without his consent. The calls all began in much the same way: Defendant or its agents introduced themselves as a representative of the Auto Service Department. The callers began the phone calls by asking for the year, make, model, and approximate milage of Plaintiff's vehicles. Afterwards, Defendant solicited vehicle warranties to Plaintiff.

(Dkt. 36 at 5 (footnotes and citations omitted).) Asking the court in Plaintiff's prior motion for default judgment to grant Plaintiff's request for almost a million dollars in damages without being candid about the true nature of the facts was, at best, a stretch of the bounds of reasonable advocacy. Indeed, the court reminds Plaintiff that it may impose sanctions on an attorney if a pleading is either legally frivolous, factually misleading, or both. *Truesdell v. S. Cal. Permanente Med. Group,* 293 F.3d 1146, 1153 (9th Cir. 2002); Fed. R. Civ. P. 11(b)(2) (3); (c).

Turning to the merits of the current motion, Plaintiff seeks $654,000 in statutory damages for 436 phone calls or, alternatively, $61,500 in statutory damages for 41 phone calls. (Mot. at 11.) Although the court accepts as true well-pleaded allegations in the complaint at default judgment, the court need not accept conclusory allegations. Here, the court declines to accept

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:24-cv-01926-FWS-ADS | Date: January 9, 2026 |
| Title: Thomas Doughty v. Pelican Investment Holdings, LLC | |

Plaintiff's conclusory assertion that the unanswered calls came from Defendant. *See Holding Co. LLC v. Pac. W. Distributors*, 2024 WL 3836053, at *4 (C.D. Cal. Aug. 15, 2024) ("While the Court accepts as true Holding's well-pleaded allegations upon entry of default, it need not accept unsupported conclusory claims.") Further, on "a motion for default judgment, the Court does not accept factual allegations regarding damages as true." *Williams v. La Perla N. Am., Inc.*, 2024 WL 4165275, at *1 (N.D. Cal. Aug. 28, 2024) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 915-17 (9th Cir. 1987)). Given that, the court finds it inappropriate to attribute to Defendant hundreds of alleged phone calls from unique numbers that Plaintiff did not answer where Plaintiff submits no phone records—only a self-generated data table. (Doughty Decl. ¶¶ 4-9; *see also* Prior Order at 10 (finding that Plaintiff's self-generated call records provided insufficient evidence).) Therefore, the court will analyze Plaintiff's request for $61,500 in statutory damages arising from the 41 phone calls that are supported by telephone records. (*See* Mot at 8; Dkt. 40-5 (billing statements reflecting 41 phone calls).)

In its previous ruling, the court determined that it had both subject matter and personal jurisdiction over this case. (Prior Order at 2.) The court also found that Plaintiff made a sufficient showing that Defendant was adequately served in this action. (*Id.*) Next, the court found that the procedural requirements of default judgment were satisfied. (*Id.* at 3.) The court incorporates its findings on these issues into the instant order and does not repeat its reasoning here. When a party seeking default judgment meets the procedural requirements, the court then considers the factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), to determine whether to grant the requested default judgment, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

    **A.**    **Possibility of Prejudice to Plaintiff**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**JS-6**

Case No. 8:24-cv-01926-FWS-ADS          Date: January 9, 2026
Title: Thomas Doughty v. Pelican Investment Holdings, LLC

---

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendant stopped defending this action, accordingly, the court finds Plaintiff will be prejudiced if default judgment is not entered because Plaintiff will "likely be without other recourse for recovery." *PepsiCo*, 238 F. Supp. 2d at 1177; *see Seiko Epson Corp. v. Prinko Image Co. (USA)*, 2018 WL 6264988, at *2 (C.D. Cal. Aug. 22, 2018) ("Given Defendant's unwillingness to answer and defend, denying default judgment would render Plaintiffs without recourse."). Therefore, the court concludes the first *Eitel* factor weighs in favor of granting default judgment.

### B.   2 & 3.   The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

Even when default is entered, courts must still determine whether the facts alleged give rise a cognizable cause of action because "claims [that] are legally insufficient . . . are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The second and third *Eitel* factors address the substantive merits of a plaintiff's claims and the sufficiency of the Complaint, and "require that a plaintiff state a claim on which [the plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003); *Eitel*, 782 F.2d at 1471; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (explaining "the issue [as to the second and third factors] is whether the allegations in the complaint are sufficient to state a claim"); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together."). "[W]here the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *Waters v. Mitchell*, 600 F. Supp. 3d 1177, 1183 (W.D. Wash. 2022) (citation and quotation marks omitted).

Relevant to this case, "[t]he TCPA and its implementing regulations prohibit initiating more than one telephone solicitation within any 12-month period to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal

---

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01926-FWS-ADS  Date: January 9, 2026
Title: Thomas Doughty v. Pelican Investment Holdings, LLC

___

Government.  Telephone solicitation is defined as the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." *Abboud v. Circle K Stores Inc.*, 2025 WL 307039, at *4 (D. Ariz. Jan. 27, 2025) (cleaned up).

The TCPA's definition of prohibited calls excludes those calls wherein the parties have an established business relationship.  *See* 47 U.S.C. § 227(a)(4).  A "phone call does not qualify as a telephone solicitation under the TCPA if the caller has an established business relationship with the recipient." *Crews v. Sun Sols. AZ LLC*, 2024 WL 2923709, at *6 (D. Ariz. June 10, 2024).  The federal regulations define an existing business relationship as:

> [A] prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(c)(2)(ii).

Previously, the court found that the second and third Eitel factors weighed against granting default judgment.  (Prior Order at 4-6.)  The court found a serious question as to whether the phone calls alleged in the Complaint occurred during an established business relationship such that the calls did not violate the TCPA.  (*Id.*)  That was so because Plaintiff's allegation that he purchased four vehicle warranties from Defendant and Plaintiff's declaration that he "'engaged with certain callers to prod information'" created a situation where the court could not discern which calls occurred during an established business relationship and thus did not violate the TCPA.  (Prior Order at 4-6.)

___

**CIVIL MINUTES – GENERAL**  6

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01926-FWS-ADS                          Date: January 9, 2026
Title: Thomas Doughty v. Pelican Investment Holdings, LLC

___

Now, Plaintiff explains that he cancelled each warranty soon after purchase. (*See* Doughty Decl. ¶¶ 15-19 (explaining that he purchased: the first warranty on August 25, 2022, and cancelled it on September 14, 2022; the second warranty on March 22, 2023, and cancelled it on April 6, 2023; the third warranty on June 27, 2024, and cancelled it on July 26, 2024; the fourth warranty on July 6, 2024, and cancelled it on August 5, 2024").) Plaintiff further declares that "I never requested to be contacted by Defendant except for" when purchasing "a warranty" and "upon cancelling all but the first warranty, I simultaneously told them not to call me anymore." (*Id.* ¶ 20.)

"An 'established business relationship' can be 'terminated by either party. The regulations provide that a 'seller-specific do-not-call request, as set forth in paragraph (d)(3) of this section, terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.' Paragraph (d)(3) exists in two versions—one that is effective now and one that is 'delayed until announcement of effective date in the Federal Register.' The currently effective version provides that entities 'must honor' a seller-specific do-not-call request 'within a reasonable time from the date such request is made' which 'may not exceed 30 days from the date of such request.'" *Crews*, 2024 WL 2923709, at *6 (citation modified). The court will accept, for the sake of argument, Plaintiff's declaration that he properly severed his business relationship with Defendant after each of the four warranties he purchased. (*See* Doughty Decl. ¶¶ 15-20.)

But Plaintiff did not cure the other issue the court previously identified: that Plaintiff declares that he "engaged with certain callers to prod information." (Prior Order at 6.) The court found that this declaration created an issue because this voluntary two-way communication could have established a business relationship between Plaintiff and Defendant. (Prior Order at 6 (citing *Crews*, 2024 WL 2923709, at *6 ("By feigning interest in the offered products and services and inquiring about the company that offered them, Plaintiff formed an 'established business relationship' with Sun Solutions during his second call with Miguel. Thus, any calls placed or text messages sent during the existence of this 'established business relationship' were not 'solicitations' within the meaning of the TCPA.").) Again, Plaintiff declares that he "engaged with certain callers to prod information," and called a number associated with Defendant "on several occasions." (Doughty Decl. ¶ 13.) Each of these voluntary communications could have created an established business relationship which, even

___

___

| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | **JS-6** |
|---|---|

**CIVIL MINUTES – GENERAL**

| Case No. 8:24-cv-01926-FWS-ADS | Date: January 9, 2026 |
|---|---|
| Title: Thomas Doughty v. Pelican Investment Holdings, LLC | |

if Plaintiff immediately terminated that relationship, would restart the clock on the reasonable time for Defendant to come into compliance with Plaintiff's request not to be called.  *See Crews*, 2024 WL 2923709, at *6 ("entities must honor a seller-specific do-not-call request within a reasonable time from the date such request is made") (citation modified).  Because Plaintiff does not provide dates for those instances where he engaged with or called Defendant, the court still cannot discern which alleged calls may have occurred during an established business relationship, and accordingly, which calls qualify under the TCPA.  *See id.*; (Doughty Decl. ¶ 13.)

Therefore, based on the record, the court concludes the second and third *Eitel* factors each weigh against granting default judgment.

### C. Sum of Money at Stake

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of Defendant[s'] conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176.  This factor compares the "recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate."  *United States v. Bronster Kitchen, Inc.*, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015).  "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct."  *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).  "However, when 'the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate'" even for significant sums.  *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

As discussed, the court analyzes Plaintiff's request for $61,500 in statutory damages for 41 phone calls.  Plaintiff's theory sounds in subsection 227(c) of the TCPA which creates a private right of action for plaintiffs who are called in disregard of the do-not-call registry.  47 U.S.C. § 227(c).  Section 227(c) provides a plaintiff a cause of action to "recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227 (d)(5).  And if "the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."  (*Id.*)

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:24-cv-01926-FWS-ADS | Date: January 9, 2026 |
| Title: Thomas Doughty v. Pelican Investment Holdings, LLC | |

___

The court applies the statutory minimum because it finds that Plaintiff's repeated engagement with Defendant negates a finding of willfulness. Therefore, the damages at issue are $20,500; $500 each for 41 violations. (*See* Mot. at 11 (requesting "$61,500 in statutory damages for 41 phone calls"). Although the amount that Plaintiff seeks is not trivial, the court finds that this factor supports default judgment because the damages at issue are set by statute. *Crews*, 2024 WL 2923709, at *3 ("Other courts have similarly concluded that the fourth *Eitel* factor supports default judgment in TCPA cases involving statutory-damage requests.").

### D.   Possibility of a Dispute Concerning Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* (quoting *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). When a plaintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is low. *See Landstar Ranger, Inc. v. Parth Entm't, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). However, "where the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *Waters*, 600 F. Supp. 3d at 1183 (citation and quotation marks omitted).

In this case, for the reasons set forth above in Section I.B, the court finds the record presents a significant possibility of dispute as to what alleged calls violate the TCPA and, conversely, what calls were made during an established business relationship. Based on this "possibility of dispute as to [] material facts in the case," *PepsiCo*, 238 F. Supp. 2d at 1177, the court finds the fifth *Eitel* factor weighs against granting default judgment.

### E.   Whether Default Was Due to Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo*, 238 F. Supp. 2d at 1177. Where a defendant is "properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Defendant appeared in this litigation but abruptly stopped defending itself. The court issued an order that extended the deadline for

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01926-FWS-ADS              Date: January 9, 2026
Title: Thomas Doughty v. Pelican Investment Holdings, LLC

Defendant to oppose a motion for summary judgment and stated that if Defendant failed to comply with the deadline, the court would enter default against Defendant.  (Dkt. 29.)  Plaintiff informed the court that Defendant's attorney of record is presently ineligible to practice law in California, so the court ordered Plaintiff to serve a copy of the instant Motion on Defendant to ensure that Defendant remained aware of this proceeding.  (Dkt. 41.)  Plaintiff filed a proof of service as to this request.  (Dkt. 42.)  Given that, the court finds the possibility of excusable neglect is low.  Therefore, the sixth *Eitel* factor weighs in favor of granting default judgment.

### F.      Policy Favoring Decision on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment."  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citation omitted).  While "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472 (citation omitted), "this preference, standing alone, is not dispositive," *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. 1996)); *see also Su v. Infinisys Inc.*, 2023 WL 6517445, at *2 (D. Ariz. Oct. 5, 2023) (stating "[t]he seventh factor generally weighs against default judgment, given that cases should be decided on their merits whenever reasonably possible," and "[h]owever, the existence of Rule 55(b), which authorizes default judgments, indicates that this preference, standing alone, is not dispositive"); *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 970 (N.D. Cal. 2019) (stating "deciding the case on the merits is impossible where a party refuses to participate" and "[the seventh *Eitel*] factor thus weighs against, but does not preclude, entry of default judgment").  "[T]he default mechanism is necessary to deal with wholly unresponsive parties who otherwise could cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 55 (2023).  Accordingly, the court finds this factor is neutral.

### G.      Conclusion

The court concludes that *Eitel* factors two, three, and five weigh against granting default judgment, factor seven is neutral, and factors one, four, and six weigh in favor of granting default judgment.  On balance, especially given that the second and third *Eitel* factors are "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:24-cv-01926-FWS-ADS | Date: January 9, 2026 |
| Title: Thomas Doughty v. Pelican Investment Holdings, LLC | |

most important," *Vietnam Reform Party*, 416 F. Supp. 3d at 962, the court concludes the *Eitel* factors weigh against granting default judgment, *see Mnatsakanyan v. Goldsmith & Hull APC*, 2013 WL 10155707, at *10 (C.D. Cal. May 14, 2013) ("The fact that factors two and three weigh against the entry of default judgment is particularly significant, as courts often treat these as the most important factors."). For these reasons, the Motion is **DENIED**.

### III.   Disposition

For the reasons stated above, the court **DENIES** the Motion. Plaintiffs second motion for default judgments suffers from similar deficiencies as the first motion. (*See* Prior Order). The court finds that allowing Plaintiffs to amend their claims against Defendant or to file a third motion for default judgment would be futile and cause undue delay. *See, e.g., Hartford Life & Accident Ins. Co. v. Maas*, 2023 WL 12004755, at *4 (C.D. Cal. Dec. 6, 2023) (denying motion for default judgment and dismissing action). Accordingly, the Motion is **DENIED**, and this case is **DISMISSED WITHOUT PREJUDICE**.